BESTER *v.* STATE.

Division A. Dec. 3, 1951.

No. 38134 (55 So. (2d) 379)

Roy N. Lee, Jas. W. Lee and J. M. Travis, for appellant.

642

**Geo. H. Ethridge,** Assistant Attorney General, for appellee.

### Holmes, C.

Appellant and his brother-in-law, R. C. McCarty, gave a Saturday night fish fry at appellant's home in a rural section of Jasper County. It was well attended by relatives and friends. A feature of the night's entertainment was the indulgence by some of those present in playing cards and shooting craps. The fish gave out about 10 o'clock but the frivolity of the occasion and the ardor of the games were prolonged into the early dawn of Sunday morning. Among those who remained for the later festivities were the appellant, who of course was at his own home, appellant's brother-in-law, R. C. McCarty, and appellant's nephew, Leroy Gibson. These three relatives

became the principal actors in an ensuing difficulty in which Gibson was killed as a result of a knife wound inflicted by appellant. Appellant was indicted in the Circuit Court of Jasper County for the murder of Gibson, and was tried and convicted of manslaughter and sentenced to imprisonment for fifteen years in the State penitentiary. He prosecutes this appeal from the judgment of conviction.

The State's proof shows that at about daylight, McCarty and Gibson were engaged in a scuffle or struggle on the front porch of appellant's house, and that appellant told them to stop and shoved them off the porch; that appellant went in the house and came out with a double-bladed ax and a butcher knife; that McCarty and Gibson were continuing their scuffle on the ground; that Tom Bester, another nephew of appellant took the ax away from him; that appellant caught McCarty by the collar and was told by Gibson to release him and that appellant then cut or stabbed Gibson with the butcher knife; that Gibson was unarmed and was not attempting to do any injury to appellant at the time; that Gibson took several steps and fell and died immediately. The sheriff of the county testified that he came to the scene about 7:30 o'clock in the morning and found the deceased lying on his stomach with his hands extending out from his body and with a steel crowbar about two or two and one-half feet long under him and protruding a few inches from his body. The sheriff was further permitted to testify, over the objection of appellant, that from his investigation, based on his information derived from talking to the people, the deceased did not have a crowbar at the time he was cut or at any time. The father of the deceased testified for the State that he came to the scene about an hour after the difficulty and saw the body of the deceased on the ground and that there was no crowbar under the body.

The proof for the defense showed that appellant was trying to separate McCarty and Gibson and stop them

from fighting; that after appellant shoved them off the porch, Gibson went in the house and came out with a crowbar; that while appellant was holding Gibson by the collar, Gibson demanded that appellant release him and advanced on appellant with the crowbar and was about to strike appellant with the crowbar when appellant cut or stabbed him.

The State offered several witnesses to show that Farrell Chapman, who was the only eyewitness for the defendant who was unrelated to him, and who had testified that the deceased had the crowbar at the time of the difficulty, had made contradictory statements in that he had previously told the district attorney that he did not . see the crowbar.

Appellant, on this appeal, presents two assignments of error. He contends, first, that ▮▮ ▮ the court erred in permitting the sheriff to testify over appellant's objections that his investigation based on information derived from talking to the people showed that the deceased did not have a crowbar at the time of the difficulty or at any time. This testimony of the sheriff was, of course, based on hearsay and was clearly incompetent. It was highly prejudicial to the appellant because of the prestige and influence of the witness' position. The witness, however, on cross-examination gave substantially the same testimony and there was no motion by the appellant to exclude it. We do not pass upon the question as to whether or not in this state of the record the action of the trial court in originally admitting the incompetent evidence over the objection of appellant constitutes reversible error, since we are reversing this case on another ground and the admission of the incompetent testimony should not occur on another trial.

Appellant further contends that the trial court erred in granting to the State the following instruction:

"The court instructs the jury for the State that you are the sole judges of the credibility of the testimony of the witnesses in the case, and if you believe from the

evidence that any witness has knowingly, wilfully, falsely and corruptly testified as to any material fact in the case you are warranted in giving such witness testimony such weight as you think proper in such case.

"The court further charges the jury that in passing on the credibility of the witnesses in the case you may consider the interest, if any, that such witness has in the case, the manner in which the testimony is given, the demeanor of the witness on the witness stand, whether the witness has testified contrary to known physical facts or has contradicted his own statements."

This instruction is objectionable both because it is on the weight of the evidence and because it singles out and gives undue emphasis and prominence to certain portions of the testimony. The particular vice of the instruction is that part of it which charges the jury that in passing on the credibility of the witnesses, the jury might consider "whether the witness has testified contrary to known physical facts or has contradicted his own statements." The State introduced several witnesses to show that Farrell Chapman, a witness for the appellant, had made statements contradictory of his testimony given on the trial. The sheriff of the county, on cross-examination, testified as to the position of the body of the deceased as he found it on arrival at the scene and as to the manner in which his hands were stretched out from his body and as to the position of the crowbar under the body. Testifying further, the sheriff said: "The crowbar being under his body in the position it was, with his hands stretched out, was kind of a puzzle to us, to understand why it would fall like that. In other words, I wanted to clear up in my own mind, if Leroy had the crowbar in his hand, how it could have fallen like that, and him with his arms out like they were, and the crowbar lying under his body. And my investigation all the way through showed that Leroy Gibson did not have the crowbar at the time he received the wound."

Of course the conclusion of the sheriff that the deceased did not have the crowbar at the time of the difficulty was

incompetent, but no motion was made to exclude it and, therefore, it was before the jury. The effect of the sheriff's testimony was to tell the jury that the physical facts contradicted appellant's witnesses who had testified that the deceased had the crowbar at the time of the fatal difficulty.

The instruction complained of was manifestly directed to the witness Farrell Chapman and to the testimony of the sheriff, and singled out and emphasized and gave undue emphasis to both, and was further a charge on the weight of the evidence.

An instruction which is on the weight of the evidence or which singles out and gives undue prominence to certain portions of the evidence is erroneous. Potera v. City of Brookhaven, 95 Miss. 774, 49 So. 617; Hood v. State, 170 Miss. 530, 155 So. 679. In the case of Hood v. State, supra, [170 Miss. 530, 155 So. 680] the Court said: "It is an established rule in this jurisdiction that although an instruction is correct as a legal proposition, it shall not single out for prominent presentation to the jury certain portions of the testimony, and, by thus drawing the special attention of the jury thereto, give an undue emphasis to the portions so specifically mentioned, unless the portions so singled out are so completely sufficient within themselves that the ultimate issue may be determined solely upon them, it found to be true."

The said instruction was particularly prejudicial to the appellant in giving undue emphasis and prominence to the sheriff's testimony as to the conclusions to be drawn from the physical facts. The vital issue in the case was whether the deceased did or did not have the crowbar at the time of the fatal difficulty.

We are accordingly of the opinion that the granting of the said instruction was reversible error. The judgment of conviction is, therefore, reversed and the cause remanded.

Reversed and remanded.

648

## PER CURIAM.

The above opinion is adopted as the opinion of the Court and for the reasons therein indicated, the judgment of the court below is reversed and remanded.