586 So.2d 792 (1991)
Jeffrey SANDERS
v.
STATE of Mississippi.
No. 07-KA-59392.
Supreme Court of Mississippi.
September 11, 1991.
*793 Merrida P. Coxwell, Jr., Stanfield Carmody & Coxwell, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
This is an appeal from the Circuit Court of Hinds County, where a jury convicted *794 the appellant, Jeffrey Sanders of the sexual battery of a 14 year-old girl. See Miss. Code Ann. § 97-3-95 (Supp. 1990). The evidence against Sanders consisted of the victim's testimony and the testimony of the authorities to whom she reported the incident. There was no physical evidence. We affirm.
Sanders appeals and alleges four errors in the trial below. He first contends that the trial court erred in allowing the testimony of the police officer and crossing guard to whom the victim reported the incident, because it was hearsay, and impermissible bolstering of the victim's testimony. Second, he contends the court erred in granting an instruction that stated that no force or violence was required for a guilty verdict. Sanders also claims that the instruction unduly focused on the fact that there was no tearing of the vagina. He next contends that the trial was fundamentally unfair because the victim testified about a separate and distinct crime, to wit: the selling of "hot tickets". Finally, Sanders claims that the verdict was against the overwhelming weight of the evidence.

Statement of Facts
On November 15, 1986, the victim was selling peanuts at Memorial Stadium in Jackson. Sanders was at the stadium that day and, upon seeing the victim, told her that she was beautiful. On the following Saturday, she sold peanuts to Sanders at the stadium, after which he started to follow her and allegedly forced her into his car. She resisted unsuccessfully; he penetrated her with his finger and ejaculated on her. He let her go after she agreed not to tell her mother. She then ran across the street to a gas station bathroom. Several crossing guards were there and she told them what happened.
Later, the police took her to the hospital for tests. The doctors were unable to find any physical evidence of a sexual assault. There were no bruises or cuts to show a struggle, nor were her clothes torn. There was no seminal fluid on her body or clothes, nor was there any tearing of the vagina.
Grace Everett, one of the crossing guards, testified to what the victim told her shortly after the incident. The appellant objected, claiming that Everett's testimony was hearsay. The judge admitted the testimony, apparently under the excited utterance exception to the hearsay rule. Everett repeated the important details of the victim's story. Everett also added that while the victim was telling her story she pointed to Sanders' car as it drove by. Everett radioed police in the area to stop the car. A few minutes later they brought the driver to the gas station where the victim identified him as the assailant. The police then took her to the police station.
Shirley Phillips-Williams, one of the police officers who brought the defendant back to the gas station, also testified. When the state tried to offer the contents of the statement the victim gave Officer Williams, the defendant objected again on hearsay grounds and that the testimony was an attempt to bolster the victim's testimony. The court overruled the objection and Officer Williams related the story that the victim told on the way to the precinct.[1]
Sanders testified he was at the stadium that day selling tickets to the football game. He testified further that while he was at the gas station putting gas in the car the victim asked him to buy some peanuts. Sanders knew her family and told her that he would buy $5.00 worth. He claimed then that he got in his car, left the area and, a few minutes later, the police pulled him over. He denied that the victim ever got in his car or that the incident ever took place.

I.

Hearsay Statements; the Pre-Rules Exceptions and the Federal Rules
As this case was tried after the adoption of the Mississippi Rules of Evidence, those *795 rules apply rather than any of the pre-rules cases that created certain exceptions applicable to child sexual abuse cases. See Miss.R.Evid. 1103; Mitchell v. State, 539 So.2d 1366, 1369 (Miss. 1989); Leatherwood v. State, 548 So.2d 389, 398 (Miss. 1989).
When the crossing guard Everett testified, defense counsel objected to her testimony as hearsay. The state and defense counsel argued whether the testimony would be admissible under either the excited utterance or present sense impression exceptions to the hearsay rule. The judge did not explain his ruling admitting the evidence, but the basis of the decision was either Miss.R.Evid. 803(1) or (2), as none of the pre-rules cases were ever mentioned by the attorneys or the judge.
Later, Officer Williams testified and defense counsel interjected a hearsay objection to that testimony as well. This time the state cited the excited utterance exception to the hearsay rule as well as the case of Cunningham v. State, 467 So.2d 902 (Miss. 1986), one of the pre-rules cases. Again the judge did not explain the basis of his ruling admitting the evidence.
Regarding both witnesses' testimony, reversal would be required if the judge relied exclusively on pre-rule cases that were inconsistent with the Mississippi Rules of Evidence.[2]See Hall v. State, 539 So.2d 1338 (Miss. 1989); Leatherwood, 548 So.2d at 400; Mitchell, 539 So.2d at 1369.[3] Here, though, the judge did not rely on anything inconsistent with the Rules in determining the admissibility of the statements by Everett and Williams and therefore, no Leatherwood/Mitchell problem exists.
So the question becomes whether the statements were admissible under the excited utterance exception. Sanders argued that Officer Williams questioned the victim and therefore her statement was not spontaneous.[4] The appellant describes these statements as the most blatant form of hearsay gathered by police officers and clothed with their status. While perhaps exaggerated, the appellant echoes a concern inherent in rule 803(2): that statements admitted under this exception be spontaneous and without the indication of manufacture. Certainly police questioning, especially questions that tend to suggest the answers, could raise serious concerns. However, under the excited utterance exception the fact that questions are asked, while relevant to spontaneity, does not ipso facto demonstrate a lack of spontaneity in every case. McCormick on Evidence, § 297 at 857 (3d ed. 1984). Here it seems that the only questions asked of the victim was "what happened?" Further, the victim was still extremely upset from the incident.
Another facet of the spontaneity requirement is the amount of time that elapsed between the incident and the statement. In this case the appellant alleged that the statements of the victim testified to by Officer Williams were not made immediately after the incident, but, rather, were made on the way to the precinct. The exact amount of time that elapsed between the incident and the statements made on the way to and at the precinct is not clear from the record but in any event, the time lapse was relatively short and the victim was still extremely upset. This supports the state's argument that Officer Williams' testimony was admissible under Miss. R.Evid. 803(2). See McCormick § 297 at 857 ("Testimony that the declarant still appeared `nervous' or `distraught' and that *796 there was a reasonable basis for continuing emotional upset will often suffice").
Therefore, Everett's testimony was admissible under the excited utterance exception. The victim reported the incident to her only minutes after it occurred and, apparently, Everett was the first person she saw. Admittedly Williams' testimony included statements made more than a few minutes after the incident, but the other circumstances tend to indicate that they were also admissible under the excited utterance exception.

II.

Instructions
Sanders alleges that the court erred by granting the following instruction:
The Court instructs the jury that if you find beyond a reasonable doubt that Jeffrey Sanders engaged in sexual penetration with ... on November 22, 1986, it is not required that there be a showing of force or violence. Further, the Court instructs the jury that there is no requirement that there be lacerations or tearing of the vagina if you find that there was sexual penetration.
First, he argues that the instruction does not properly state the law. The statute proscribing sexual battery states that:
A person is guilty of sexual battery if he or she engages in sexual penetration with:
(a) Another person without his or her consent; . ..
Miss. Code Ann. § 97-3-95 (Supp. 1990).
The appellant urges this Court to interpret "without his or her consent" to mean that either force was used or the failure of the victim to resist resulted from a reasonable apprehension that he or she would be greatly injured or killed for resisting. Further he argues that force or violence are elements that a jury could consider in determining whether the victim consented to the act. Undoubtedly the later is true but that doesn't mean that force or reasonable apprehension of force are necessary elements of the crime. Generally, an instruction is sufficient when it follows the language of the pertinent statute. Crenshaw v. State, 520 So.2d 131 (Miss. 1988). Incidentally, the victim did testify that Sanders used force in perpetrating the act. The appellant's only complaint is that there was no physical evidence of force to corroborate her version of the facts.
The appellant also complains that the instruction singles out one factual element and is an improper comment on a portion of the testimony. One part of the instruction states "[f]urther, the Court instructs the jury that there is no requirement that there be lacerations or tearing of the vagina if you find that there was sexual penetration.".
As a general proposition, the trial judge should not give undue prominence to particular portions of the evidence in the instructions. Miss. Code Ann. § 99-17-35 (1972); Ragan v. State, 318 So.2d 879, 882 (Miss. 1975). This prophylactic rule has the salutary purpose of protecting the jury from their natural inclination to put great weight in the judge's statements. To that end, this Court has held that instructions which emphasize any particular part of the testimony in such a manner as to amount to a comment on the weight of that evidence are improper. Duckworth v. State, 477 So.2d 935, 938 (Miss. 1985) ("It is also well established that instructions should not single out or contain comments on specific evidence").
It can be reasonably argued that this instruction did emphasize a portion of the evidence and that it was inartfully drawn. However, under these facts, this portion of the instruction can be more properly characterized as merely an explanation, albeit an unnecessary one, of the term penetration. Further, this emphasis does not seem to have been particularly prejudicial to the appellant. Whether or not there was tearing of the vagina was not a central issue of the case. Neither party disputed that fact. See Bester v. State, 212 Miss. 641, 55 So.2d 379, 381 (1951) (reversed because instruction gave emphasis and prominence to one witness' version of a disputed and vital factual issue). Therefore, even if *797 it was error to grant this portion of the instruction, it was harmless.

III.

Evidence of the separate and distinct crime of "selling hot tickets"
Several times during the trial the victim inadvertently referred to the fact that the appellant was selling "hot tickets" at the stadium. After the second unsolicited reference to "hot tickets," the appellant objected and the trial court sustained the objection and asked the jury if they could disregard the remarks. All of the jurors responded affirmatively. The appellant did not ask for a mistrial.[5] Nevertheless, he now contends that these remarks require that he be granted a new trial.
Evidence of past crimes not resulting in conviction is generally inadmissible, Lightsey v. State, 493 So.2d 375 (Miss. 1986), and "a mistrial in such a case is proper unless it can be said with confidence that the inflammatory material had no harmful effect on the jury." Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987) (citations omitted). This Court has repeatedly held that jurors are presumed to have followed the trial judge's instructions. Walker v. State, 473 So.2d 435 (Miss. 1985). Therefore, even if the unsolicited reference to "hot tickets" was inflammatory and the failure to ask for a mistrial did not waive the error on appeal, the thorough corrective measures taken by the judge completely cured any prejudice to the appellant.

IV.

Overwhelming Weight of the Evidence
Finally the appellant argues that the verdict was against the overwhelming weight of the evidence. He raised this issue in his motion for a j.n.o.v. and new trial which the trial court denied. The applicable standard of review is:
[O]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Lee v. State, 469 So.2d 1225, 1230 (Miss. 1985). See also Pate v. State, 557 So.2d 1183, 1184 (Miss. 1990); McFee v. State, 511 So.2d 130, 133-34 (Miss. 1987).
Sanders again argues that no force or intimidation was used and, therefore, a reasonable juror could not believe that this act occurred without the victim's consent. However, the victim did testify that Sanders grabbed her, put her in his car and she fought him, but he "started messing with her" anyway. It is true that the victim was rather vague on some of the details. For example, she couldn't explain exactly how Sanders put her in the car or held her there. Also, she seemed confused as to where the car was located when the incident took place. For instance, at one point she said that the man came up behind her, she fell and he pulled her into the car. Another time she stated that she went over to Sanders when he asked to buy some peanuts and he pulled her into the car. The victim neither received any cuts or bruises during the incident nor were her clothes torn. Nevertheless, the jury was there to evaluate the testimony and it would be difficult to say that the verdict was unreasonable under the facts in the record.
Finding no error in the trial below, the conviction is affirmed.
*798 CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN (15) IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SEVEN (7) YEARS SUSPENDED, AND EIGHT (8) YEARS TO SERVE, WITH FIVE (5) YEARS SUPERVISED PROBATION, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN and BANKS, JJ., concur.
DAN M. LEE, P.J., dissents with written opinion, joined by SULLIVAN, J.
DAN M. LEE, Presiding Justice, dissenting:
I respectfully dissent to the majority's opinion, primarily based upon the following instruction to the jury:
The Court instructs the jury that if you find beyond a reasonable doubt that Jeffrey Sanders engaged in sexual penetration with S.W.[1] on November 22, 1986, it is not required that there be a showing of force or violence. Further, the Court instructs the jury that there is no requirement that there be lacerations or tearing of the vagina if you find that there was sexual penetration.

Jury instructions should properly state the applicable law in order that the jury will have law guidelines that will permit them to apply the applicable facts to the law, and thereby reach a decision.
It is the burden of the State to establish the guilt of a defendant in any criminal case beyond a reasonable doubt to a moral certainty. It should never be the purpose of an instruction to relieve that burden of proof, thereby supplying to the jury a gap, or an inference, from the lack of proof that, in fact, a rape did take place. The fact that there were no lacerations or tearing of the vagina in a rape case may be some corroboration or inference that the Defendant is, in fact, innocent and did not commit the rape. The jury should not be instructed negatively that this failure of the State's proof may not be considered.
The instruction complained of contains this language:
Further, the Court instructs the jury that there is no requirement that there be lacerations or tearing of the vagina if you find that there was sexual penetration.
It is noted that the instruction has in the sentence immediately prior thereto these words:
[I]t is not required that there be a showing of force or violence.
Therefore, certainly there was no reason for additional language and for the instruction to be redundant, spelling out to the jury that they should not consider the lack of lacerations or tearing of the vagina, the lack of which evidentiary facts may be construed as corroborating the Defendant's contention that no rape occurred.
It is improper for jury instructions to comment upon particular evidence or the weight of evidence. Duckworth v. State, 477 So.2d 935, 937-38 (Miss. 1985); Voyles v. State, 362 So.2d 1236, 1244 (Miss. 1978); Scott County Co-op v. Brown, 187 So.2d 321, 327 (Miss. 1966); White v. Mississippi Power Co., 252 Miss. 97, 102-103, 171 So.2d 312 (1965).
As has been said by many justices of this Court, I think it much wiser for the system to have much more respect and faith in the jurors, and that the good trial judges of the state instruct upon the law and allow our very able jurors to decide if the state has met its burden without instructing that certain proof is not necessary, such as the lacerations and tearing in this case.
For these reasons I respectfully dissent.
SULLIVAN, J., joins this dissent.
NOTES
[1] It is unclear from the record whether these conversations occurred on the way to or at the precinct.
[2] It is probably true that Cunningham is not inconsistent with 803(2). In that case it seems that the victim's statement would have qualified under the excited utterance exception.
[3] Both of these cases were reversed and remanded because the judges relied exclusively on a judicially created "tender years" exception then applicable in sexual abuse cases. The problem was that both of those cases were tried after the adoption of the Mississippi Rules of Evidence. The rules did not contain such an exception and expressly superseded any inconsistent common law evidence rules. See Miss. R.Evid. 1103.
[4] Sanders argues that this proves the Phillips-Williams testimony was not the result of a spontaneous statement by the victim and therefore inadmissible under Williams v. State, 427 So.2d 100, 102-03 (Miss. 1983), one of the pre-rules cases. From the result reached above, this argument should be treated as an attack on the applicability of the excited utterance exception. Of course, by definition, spontaneity is at the heart of that rule.
[5] Because the appellant failed to ask for a mistrial he frames this issue now as one of "fundamental fairness." This Court has noted that when inadmissible evidence has come before the jury and the trial judge takes curative action, he is in the best position to assess the amount of prejudice resulting from the incident. Therefore his decision on a mistrial will be disturbed only in rare circumstances. Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987). Furthermore, this Court has noted that there is no exception to the necessity for a motion for a mistrial if the error is to be preserved on appeal. Thomas v. State, 358 So.2d 1311, 1313 (Miss. 1978). It seems the appellant is trying to avoid this procedural bar by characterizing the issue as one of "fundamental fairness."
[1] In the interest of protection of the victim, her initials will be substituted.